```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**GENERAL INSURANCE COMPANY**
**OF AMERICA,**

    **Plaintiff,**

**v.**                                     **CIVIL ACTION NO. 2:06-00276**

**MARK HOPKINS, et al.,**

    **Defendants.**

### MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

Pending before the court are the cross motions for summary judgment of plaintiff General Insurance Company of America (Doc. No. 24) and defendant Mark Hopkins (Doc. No. 30). For the reasons set forth below, the court grants plaintiff's motion and denies defendant's motion.

### I.   Factual and Procedural Background

Plaintiff General Insurance Company of America ("General Insurance") filed its complaint for declaratory judgment in this court on April 12, 2006, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. No. 1 at 1-2.) This suit arises from an accident that occurred on or around the evening of August 20, 2003, in Bristol, Tennessee. (Id. at 3.) On that date, defendants Mark Hopkins, Mark Nease, and Eric Beane traveled to Bristol in a pickup truck owned by Nease and insured

by plaintiff.[1] (Id.; Doc. No. 25 at 1.) In the back of the truck, defendants were transporting a golf cart owned by Beane, in which had been placed a gasoline-powered generator and a battery charger. (Doc. No. 25 Ex. C at 8-9; Ex. D at 27.) The truck was also pulling a camper, which was unhooked from the truck upon arrival at the campground in Bristol. (Doc. No. 25 Ex. D at 22-23.) After moving the truck away from the camper, Nease attached two ramps to the bed of the truck to enable Beane to unload the golf cart. (Doc. No. 25 Ex. C at 13.) Beane backed the golf cart down the ramp, stopped it, and shifted the cart into its forward gear. (Id. at 14.) He then drove the cart to the right of the truck and started up the slope to the camper, while Nease began to load the ramps back into the truck. (Id.) Hopkins had moved approximately ten to twelve feet away from the truck while the golf cart was being unloaded, where he stood looking over the campground and the nearby automobile racetrack. (Ex. B at 55.)

After driving the golf cart up the hill toward the camper, Beane locked the golf cart's brake, turned the cart off, and began to get out of the cart. (Doc. No. 25 Ex. D at 28-29.) When the cart began to move backward down the hill, Beane jumped

---

[1] Pursuant to Federal Rule of Civil Procedure 55(a), default judgment was entered against defendants Nease and Beane on July 10, 2006, when they failed to file a timely answer to the complaint. (See Doc. No. 13.) Accordingly, the pending motions for summary judgment pertain only to defendant Hopkins.

back into it to try to gain control of it, and yelled for the others to beware.  (Id. at 29-30.)  The golf cart continued down the hill, either because the wet grass had caused the wheels to slide, or because the brake had become disengaged, possibly due to the positioning of the generator, thus allowing the wheels to turn.  (Id. at 29-31.)  When the cart neared the pickup truck, it crashed into one of the loading ramps, causing the ramp to strike Nease.  (Id. at 31.)  Nease and Hopkins then attempted to stop the golf cart, but in the process the cart struck Hopkins and ran over him, causing him significant injury.  (Doc. No. 25 Ex. C at 14-15, 54; Ex. B at 95-97.)

   Hopkins subsequently filed suit in state court against Nease and Beane for the injuries he sustained as a result of the accident.  (Doc. No. 25 Ex. E.)  In April of 2006, Beane, Nease, and Hopkins reached an agreement pursuant to which Beane and Nease consented to judgment being entered against them in the amount of $120,000.00.  (Doc. No. 25 at 3.)  In exchange for these consent judgments, Hopkins agreed not to execute the judgments, but rather to accept an assignment of any rights Beane and Nease had against General Insurance, the insurer of Nease's pickup truck.  (Id.)

Also in April of 2006, General Insurance filed this action for declaratory judgment pursuant to 28 U.S.C. § 2201.[2] Plaintiff seeks a declaration of its rights and obligations under the policy of automobile insurance it issued to Nease. (Doc. No. 1.) The parties have filed cross motions for summary judgment, both of which are ripe for disposition. (Doc. Nos. 24 and 30.)

## II. **Standard of Review**

Turning to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56. The moving party has the burden of establishing that there is no genuine issue as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As the United States Supreme Court of Appeals stated in Celotex, "the plain language of Rule 56(c) mandates the entry of summary

---

[2] 28 U.S.C § 2201(a) states in pertinent part as follows:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.  Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. <u>Analysis</u>

Plaintiff's complaint for declaratory judgment contains three counts relating to its obligations under the policy with regard to liability coverage (Count I), medical payments coverage (Count II), and uninsured/underinsured motorist coverage (Count III). (Doc. No. 1 at 9-11.)

**A. Count I – Liability Coverage**

Under the insurance policy at issue, plaintiff agreed to provide coverage "for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." (Doc. No. 25 Ex. A at 2.) "Insured" is further defined to include Nease or any of his family members for purposes of the ownership, maintenance, or use of any automobile or trailer, and also any person "using" the covered automobile, i.e. Nease's pickup truck.[3] (<u>Id.</u>) Accordingly, the existence of liability coverage hinges on whether the accident arose from the men's "use" of the pickup truck.

---

[3] The policy specifically excludes liability coverage for the ownership, maintenance, or use of any vehicle designed mainly for use off public roads, an exclusion that clearly applies to the golf cart. (Doc. No. 25 Ex. A at 3.) Although plaintiff addresses this point in its brief (Doc. No. 25 at 14-15), defendant does not appear to dispute that the golf cart is not a covered vehicle under the policy (<u>see</u> Doc. No. 31).

-6-

The Supreme Court of Appeals of West Virginia[4] recognizes "use" in this context to encompass more than driving or riding in a vehicle. Adkins v. Meador, 494 S.E.2d 915, 920 (W. Va. 1997). Rather, "'use' of a vehicle means to 'put into action or service,' 'to carry out a purpose or action by means of,' or '[to] make instrumental to an end or process.'" Id. at 921 (quoting Nationwide Mut. Ins. Co. v. Davis, 455 S.E.2d 892, 894 (N.C. 1995); Webster's Third New Int'l Dictionary (1976)). The court has cautioned that an exact definition of the term is elusive, and that whether a particular injury arose from the "use" of a vehicle will depend upon the factual context surrounding the injury. Adkins, 494 S.E.2d at 921 (quoting Federated Mut. Implement & Hardware Ins. Co. v. Gupton, 241 F. Supp. 509, 511 (E.D. S.C. 1965)).

Although the concept of "use" inherently includes the exercise of control over a vehicle, it is much broader than the term "operate." Johnson v. State Farm Mut. Auto. Ins. Co., 438 S.E.2d 869, 872 (W. Va. 1993). The concept is not of limitless scope, however. Indeed, courts uniformly require that there be a causal connection between the "use" of the covered vehicle and the injury in question. Baber v. Fortner, 412 S.E.2d 814, 818 (W. Va. 1991)(quoting Detroit Auto. Inter-Ins. Exch. v.

---

[4] Under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 78 (1938), the court has applied state substantive law.

Higginbotham, 290 N.W.2d 414, 419 (Mich. 1980)).  "Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle."  Baber, 412 S.E.2d at 818 (quoting Higginbotham, 290 N.W.2d at 419).  In analyzing whether a vehicle was in "use" at the time of an accident, the West Virginia Supreme Court has also applied the following four-factor test:

> (1) There must be a causal relation or connection between the injury and the use of the insured vehicle;
>
> (2) The person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> (3) The person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> (4) The person must also be engaged in a transaction essential to the use of the vehicle at the time.

Cleaver v. Big Arm Bar & Grill, Inc., 502 S.E.2d 438, 442 (W. Va. 1998)(quoting Rau v. Liberty Mut. Ins. Co., 585 P.2d 157, 162 (Wash. 1978)).

Applying these standards to the case at hand, the court must conclude that Hopkins' injuries did not arise from the "use" of the pickup truck.  It is undisputed that at the time of the accident, Beane had completely backed the golf cart off of the unloading ramps, switched it to its forward gear, and driven it some distance up the hill.  At that point he applied the brake and took one or two steps out of the cart when it began to move

back down the hill.[5]  The accident that ensued bore no causal relation to the use of the pickup truck to transport and unload the golf cart; it might just as easily have occurred independently of the cart having been transported in and unloaded from the truck.  Rather, the injury arose out of Beane's use of the cart to transport the generator and battery charger to the camper.  As such, the use of the pickup truck immediately prior to the use of the golf cart was purely incidental to the injuries Hopkins sustained.  Even assuming for the sake of argument that any one of the remaining factors weighs in favor of coverage, in the absence of a causal connection between the accident and the use of the pickup truck, there can be no coverage for Hopkins' injuries.

Defendant contends that there is evidence to support a finding that the men were still in the process of unloading the truck at the time of the accident, and were thus still "using" the truck for purposes of liability coverage (Doc. No. 31 at 9).  See Am. Oil Co. v. Hardware Mut. Cas. Co., 408 F.2d 1365 (1st Cir. 1969)(construing "using" provision in policy to include loading and unloading).  In support of this argument, defendant quotes the deposition of defendant Nease and the accident report

---

[5] Although Hopkins asserts that the dispute as to whether the cart slid or rolled down the hill is sufficient to defeat plaintiff's motion (Doc. No. 31 at 3), the court finds this distinction to be immaterial under the summary judgment standard.

of Detective Robert Bedwell of the Bristol Police Department, both of which describe the accident as having taken place while the men were in the process of unloading the truck.  (Doc. No. 31 at 9.)  The court certainly need not accept these conclusory statements, however, where the undisputed facts indicate that the men had completely unloaded the golf cart, that Beane had driven it away from the truck, and that he had even parked it and begun to step away from it before the accident occurred.

Defendant argues in the alternative that even if the cart had been completely unloaded when the accident occurred, coverage would still exist where the injury resulted from negligence in the unloading, even if the injury was not sustained contemporaneously with that unloading.  (Id. at 10-11 (citing Dodson v. Key, 508 S.W.2d 586 (Ky. 1974).)  In Dodson, employees of the insured under an automobile liability policy delivered a load of sheetrock to a customer of the insured and stacked the material against a wall on the customer's porch.  Dodson, 508 S.W.2d at 587.  When the customer's daughter attempted to move a piece of the material many hours later, the stack fell on and injured her.  Id.  The Court of Appeals of Kentucky held that insurance coverage existed under the policy applicable to the truck used to transport the sheetrock because the daughter's injury resulted from the negligent placement of the sheetrock, which constituted part of the unloading of the material from the

truck.  Id. at 590.  By contrast, in the instant case the accident arose not out of any negligence in the unloading of the golf cart from the insured pickup truck, but from negligence in the use of the uninsured golf cart to transport the generator and battery charger to the camper.  As such, no liability coverage exists under the policy for Hopkins' injuries.

**B.     Counts II and III – Medical Payments Coverage and Uninsured/Underinsured Motorist Coverage**

Counts II and III of plaintiff's complaint seek a declaration that the policy provides no coverage to Hopkins under the medical payments and uninsured/underinsured motorist provisions.  (Doc. No. 1 at 10-11.)  In order to trigger either type of coverage, Hopkins must have been occupying the covered vehicle at the time of the accident.  (See Doc. No. 25 Ex. A at Parts B, C.)  It is undisputed that all three men were outside of the covered pickup truck at the time of the accident.  Accordingly, the policy provides no medical payments coverage and no uninsured/underinsured motorist coverage for Hopkins' injuries.

## IV.  Conclusion

Plaintiff has demonstrated that there are no material facts in dispute and that it is entitled to judgment as a matter of law as to all three counts of the complaint.  Accordingly, in a separate judgment order to be entered contemporaneously with this opinion, the court **GRANTS** plaintiff's motion for summary judgment

(Doc. No. 24), and **DENIES** defendant Hopkins' motion for summary judgment (Doc. No. 30).  Pursuant to 28 U.S.C. § 2201, the court **FINDS** and **DECLARES** that no coverage exists under the policy at issue with respect to defendant Mark Hopkins' injuries.  The court further **DENIES** plaintiff's request for costs and attorneys fees related to this action (Doc. No. 1 at 12).

It is **SO ORDERED** this 19th day of June, 2007.

ENTER:

*/s/ David A. Faber*
David A. Faber
Chief Judge